UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
OLIVER BRUCKAUF, as Parent and Natural Guardian
of E.B.[1], and OLIVER BRUCKAUF, Individually;

JANERIS RODRIGUEZ MEJIA, as Parent and Natural
Guardian of E.R., and JANERIS RODRIGUEZ MEJIA,
Individually;

MAYTINEE BIRD, as Parent and Natural Guardian
of H.C., and MAYTINEE BIRD, Individually;

DONNA CORNETT, as Parent and Natural Guardian
of J.B., and DONNA CORNETT, Individually;

KAMOLPORN LUMMAYOS, as Parent and Natural
Guardian of R.L., and KAMOLPORN LUMMAYOS,
Individually;

CLAUDIA RIVAS, as Parent and Natural Guardian of S.C.,
and CLAUDIA RIVAS, Individually;

SANDRA LEE, as Parent and Natural Guardian of V.G.,
and SANDRA LEE, Individually;

CRYSAL CROSLEY, as Parent and Natural Guardian of Z.C.,
and CRYSAL CROSLEY, Individually;

MADELINE GRULLON, as Parent and Natural Guardian
of C.B., and MADELINE GRULLON, Individually;

MARIA HIDALGO, as Parent and Natural Guardian of
L.S., and MARIA HIDALGO, Individually;

ADEJUMOKE OGUNLEYE, as Parent and Natural
Guardian of D.O., and ADEJUMOKE OGUNLEYE,
Individually;

ROSA ELBA de PAULINO, as Parent and Natural
Guardian of R.P., and ROSA ELBA de PAULINO,
Individually;

MARTINE THOMAS and SCOTT THOMAS,
as Parents and Natural Guardians of A.T.1, and

---

[1] Although the full name of the Parent is used in the Complaint and Order to Show Cause herein, pursuant to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g) (and 34 C.F.R. Part 99), Plaintiff is using the initials of the Student to protect the Student's privacy.

MARTINE THOMAS and SCOTT THOMAS,
Individually;

SHANTEL TALLEY, as Parent and Natural
Guardian of A.C., and SHANTEL TALLEY,
Individually;

MARLENE VASQUEZ, as Parent and Natural Guardian
of L.C., and MARLENE VASQUEZ, Individually;

LINDA LARACH-COHEN, as Parent and Natural
Guardian of M.C., and LINDA LARACH-COHEN,
Individually;

MARILYN BECKFORD, as Parent and Natural
Guardian of M.B., and MARILYN BECKFORD,
Individually;

PATRICK DONOHUE, as Parent and Natural
Guardian of S.J.D., and PATRICK DONOHUE,
Individually,

Plaintiffs,

   -against-                                                    2**5-cv-05679**

MELISSA AVILES-RAMOS, in her official capacity as
Chancellor of the New York City Department of
Education, and the NEW YORK CITY
DEPARTMENT OF EDUCATION,

Defendants.

-----------------------------------------------------------------**X**


# **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
# **ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

Nicholas A. Marricco, Esq.
Liberty and Freedom Legal Group
105 East 34th Street, #190
New York, NY 10016
(646) 850-5035
nick@pabilaw.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………….. i

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS............................................................................ 2

LEGAL BACKGROUND .................................................................. 8

ARGUMENT .................................................................................... 10

I.    **PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ESTABLISHING PLAINTIFF-STUDENTS' PENDENCY PLACEMENT AT iBRAIN FOR THE 2025-26 SCHOOL YEAR** ....................................................... 10

II.   **PENDENCY ACTS AS AN AUTOMATIC PRELIMINARY INJUNCTION THAT REQUIRES DEFENDANTS TO FUND PLAINTIFFS' EDUCATIONAL PLACEMENT DURING THE DUE PROCESS PROCEEDINGS**………..………...14

II.   **PLAINTIFFS' PENDENCY CLAIMS FOR 2025-26 SCHOOL YEAR SATISFY THE TRADITIONAL PRELIMINARY INJUNCTION STANDARD**..................... 21

   A.   **Likelihood of Success on the Merits** .................................................... 21

   B.   **Irreparable Harm** ................................................................................. 22

   C.   **The Balance of Equities Favors Injunctive Relief**................................... 23

   D.   **Injunctive Relief Under the IDEA is in the Public's Interest**................................... 24

CONCLUSION ................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

*Page(s)*

**<u>Federal Cases</u>**

*Abrams v. Porter, No. 20-3899-cv,*
  2021 U.S. App. LEXIS 36362 (2d Cir. Dec. 9, 2021) ............................................................ 21

*Angamarca v. New York CityDept. of Educ.,*
  No. 19 CIV. 2930 (PGG), 2019 WL 303491, at *1 (S.D.N.Y. July 11, 2019) ........................ 24

*Araujo v. N.Y.C. Dep't of Educ.,*
  2020 U.S. Dist. LEXIS 175767 (S.D.N.Y. Sep. 24, 2020) ..................................................... 15

*Araujo v. N.Y. City Dep't of Educ.,*
  No. 20-cv-7032 (LGS), 2020 WL 5701828, at*2 (S.D.N.Y. Sept. 24, 2020) ......................... 25

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley,*
  458 U.S. 176, 181 (1982) ..................................................................................................... 9, 26

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,*
  290 F.3d 476, 483-84 (2d Cir. 2002) ................................................................................. 13, 16

*Canon U.S.A., Inc. v. Sysorex Gov't Servs., Inc.,*
  2024 U.S. Dist. LEXIS 79881 (E.D.N.Y. May 1, 2024) .......................................................... 18

*C.F. ex rel. R.F. v. New York City Dep't of Educ.,*
  746 F.3d 68, 73 (2d Cir, 2014) ................................................................................................... 9

*C.P. by Curtis v. Kankakee Cmty. Unit Sch. Dist.,*
  No. 05-2145, 2005 WL 8163374 (C.D. Ill. Aug. 29, 2005) ..................................................... 12

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.,*
  752 F.3d 145, 152 (2d Cir. 2014) ......................................................................................... 9, 23

*Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.,*
  526 U.S. 66, 68 (1999) ................................................................................................................ 8

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
  598 F.3d 30, 32 ( 2d Cir. 2010) ................................................................................................. 23

*Connecticut State Police Union v. Rovella,*
  36 F.4th 54, 62 (2d Cir) ............................................................................................................ 23

*Doe v. E. Lyme Bd. of Educ.,*
  790 F.3d 440, 452 (2d Cir. 2015) .............................................................................................. 11

*Drinker by Drinker v. Colonial Sch. Dist.,*
  78 F.3d 859, 867 (3d Cir. 1996) ........................................................................................... 14, 19

*Dubois v. Connecticut State Bd. of E*d,
    727 F.2d 44 (2d Cir.1984).............................................................................................. 26

*Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*,
    580 U.S. 386 (2017)................................................................................................... 8, 9

*Fannie Mae v. 204 Ellery St., LLC, No. 23 CV 5343 (ENV)(R*ML)
    2025 U.S. Dist. LEXIS 40829, at \*30-31 (E.D.N.Y. Mar. 6, 2025)......................................... 17

*Forest Grove School Dist. v. T.A.,*
    557 U.S.  230, 239 (2009)........................................................................................... 27

 *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.,*
    368 F. Supp.2d 31325 (S.D.N.Y. 2005)  ......................................................................... 24, 27

*Honig v. Doe*,
    484 U.S. 305, 326-27 (1988) ..................................................................................... 10, 24

*John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit,*
    318 F 545, 556 (3d Cir. 2003)....................................................................................... 10

*Joshua A. v. Rocklin Unified Sch. Dist.*,
    559 F.3d 1036 (9th Cir. 2009) ...................................................................................... 14

*Lunceford v. D.C. Bd. of Educ.*,
    745 F.2d 1577, 1582 (D.C. Cir. 1984) ............................................................................ 12

*M.O. v. New York City Dep't of Educ.*,
    793 F.3d 236, 239 (2d Cir. 2015)..................................................................................... 9

*M.R. v. Ridley Sch. Dist.,*
    744 F.3d 112, 123–24 (3d Cir. 2014) ..................................................................... 10, 14, 17

*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.,*
    386 F.3d 158, 160-61 (2d Cir. 2004) ....................................................................... 10, 12, 14, 24

*Mendez v. Banks*,
    65 F.4th 56, 62-63 (2d Cir. 2023) . .......................................................................... passim

*Moonsammy v. Banks*,
    2024 U.S. Dist. LEXIS 99415 (S.D.N.Y. June 3, 2024)............................................... 17, 18, 20

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
    297 F.3d 195, 197 (2d Cir. 2002)..................................................................................... 8

*Spilsbury v. D.C.*,
    307 F. Supp. 2d 22, 27 (D.D.C. 2004) ............................................................................ 12

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.,*
   96 F.3d 78, 87 (3d Cir. 1996)........................................................................... 10, 13, 19

*T.K. v. New York City Dep't of Educ.,*
   810 F.3d 869, 875 (2d Cir. 2016).............................................................................. 8, 9

*Zvi D. by Shirley D. v. Ambach,*
   694 F.2d, 904, 906 (2d Cir. 1982)......................................................................... passim

*V.W. by & through Williams v. Conway,*
   236 F. Supp. 3d 554, 581 (N.D.N.Y 2017)............................................................ 26, 27

*Ventura de Paulino v. New York City Dep't of Educ.,*
   959 F.3d 519, 532 (2d Cir. 2020)......................................................................... passim

## Cases

*Davis v. Banks,*
   No. 22-CV-8184 (JMF), 2023 U.S. Dist. LEXIS 160092 (S.D.N.Y. Sep. 11, 2023)............... 19

*H.W v. Comal Indep. Sch. Dist.,*
   2021 U.S. Dist. LEXIS 76247 (W.D. Tex. April 21, 2021 ..................................................... 18

*Paulino v. N.Y.C. Dep't of Educ.,*
   2024 U.S. Dist. LEXIS 132633 (S.D.N.Y. July 24, 2024) ................................................ 15, 18

*Willis v. Adult & Prison Educ. Res. Workshop,*
   Civil Action No. 22-1615-SRF, 2025 U.S. Dist. LEXIS 120061 (D. Del. June 24, 2025) ...... 18

## Federal Statutes

20 U.S.C. § 1400 .................................................................................................... 26

20 U.S.C. § 1415(b)(7)(A)(f)(1), ................................................................................. 9

20 U.S.C. §1415(i)(2)(A) ........................................................................................... 9

20 U.S.C. § 1415(j) .......................................................................................... passim

U.S.C. § 1415(i) ....................................................................................................... 2

## State Statutes

N.Y. Educ. Law §4404(1)-(2) ....................................................................................... 9

## State Regulations

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i) ............................................................. 2

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of Plaintiffs' Motion for a Preliminary Injunction against Defendants, MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education and the NEW YORK CITY DEPARTMENT OF EDUCATION (collectively "DOE").

Plaintiffs seek an Order to establish the Students' pendency placement/program for 2025-2026 SY,[2] including the financial obligations of Defendants to implement the pendency placement/program at the International Academy for the Brain ("iBRAIN"), in accordance with their respective tuition, transportation and nursing service agreements for the 2025-2026 SY. The funding obligations of Defendants began through implementing and complying with Plaintiff-Students' "stay-put" or "pendency" rights, where applicable, and the final unappealed administrative orders issued under the Individuals with Disabilities Education Act ("IDEA"), which required Defendants to fund Plaintiffs' disabled Students' private educational program/placement and related services, in accordance with their respective agreements. Additionally, Defendants have unilaterally decided to grant themselves a stay of their legal obligations, creating an untenable situation where Plaintiffs are deprived of their fundamental pendency rights being deprived of the funding that "goes hand-in-hand" with placement. Plaintiffs therefore seek an enforceable order from this Court to effectuate their pendency rights and compel the DOE to honor their pendency

---

[2] The attached Exhibits to the Complaint (ECF Nos. 1-1-18) are the Plaintiffs' Due Process Complaints for the 2025-2026 school year which include several documents that are relevant to each Plaintiff-Student's current educational program/placement. Each document is marked as an exhibit to the DPC when filed. Attached to the DPC as **Exhibit A** is the Ten-Day Notice; **Exhibit B** is the Pendency Implementation Form; **Exhibit C** is the legal basis for Pendency, i.e., most recent final administrative order; **Exhibit D** is a proposed Order of Pendency; **Exhibit E** is the iBRAIN Annual Enrollment Contract; **Exhibit F** is the Sisters School Transportation Annual Service Agreement; and **Exhibit G** is the Nursing Service Annual Agreement, where applicable (some of the Plaintiff-Students do not require 1:1 nursing services).

obligations under the IDEA. Any significant delays in funding by the Defendants in their financial obligations will cause Plaintiffs to accrue tuition, transportation and nursing late fees as detailed in their respective agreements, which should also be included as part of any Order to compel payment.

Despite binding legal obligations under the IDEA, Defendants have systematically failed to comply with these automatic obligations, depriving Plaintiffs' children—students with disabilities—of the free appropriate public education ("FAPE") to which they are entitled. Defendants' inaction threatens significant financial, educational, and developmental harm, jeopardizing the stability of the Students' current educational placement and the specialized services they rely upon for progress. These harms are irreparable and fundamentally contravene the core purpose of the IDEA: to ensure educational equity and stability for students with disabilities.

## STATEMENT OF FACTS

### OLIVER BRUCKAUF, PARENT AND NATURAL GUARDIAN OF E.B.

On July 2, 2025, Plaintiff Bruckauf brought a Due Process Complaint ("DPC") against DOE for the 2025-2026 SY. *See* ECF No. 1-1. The DPC alleges, among other things, that DOE did not provide E.B. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored a request for direct payment of the unilateral placement. U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i). *See* ECF No. 1, ⁋ 165. Plaintiff Bruckauf requested DOE fully fund E.B.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition, transportation, and nursing, to maintain the status quo educational placement, through the "stay-put" provision under 20 U.S.C. § 1415(j). iBRAIN is the Pendency placement at the time the due process proceedings commenced, which established E.B.'s Pendency throughout the administrative and judicial proceedings relative to Plaintiff Bruckauf's DPC for the 2025-2026 SY. *See* ECF No. 1, ⁋ 166. The DPC was assigned IHO Case No. 296784. *See* ECF No. 1, ⁋ 169.

### JANERIS RODRIGUEZ MEJIA, PARENT AND NATURAL GUARDIAN OF E.R.

On July 3, 2025, Plaintiff Mejia brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-2. The DPC alleges DOE did not provide E.R. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 170. Plaintiff Mejia requested DOE fully fund E.R.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition, transportation and nursing. *See* ECF No. 1, ⁋ 171. The DPC was assigned IHO Case No. 296787. *See* ECF No. 1, ⁋ 174.

## MAYTINEE BIRD, AS PARENT AND NATURAL GUARDIAN OF H.C.

On June 30, 2025, Plaintiff Bird brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-3. The DPC alleges DOE did not provide H.C. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct of the unilateral placement. *See* ECF No. 1, ⁋ 175. Plaintiff Bird requested DOE fully fund H.C.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition, transportation, and nursing. *See* ECF No. 1, ⁋ 176. The DPC was assigned IHO Case No. 295762. *See* ECF No. 1, ⁋ 179.

## DONNA CORNETT, AS PARENT AND NATURAL GUARDIAN OF J.B.

On July 7, 2025, Plaintiff Cornett brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-4. The DPC alleges DOE did not provide J.B. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct of the unilateral placement. *See* ECF No. 1, ⁋ 180. Plaintiff Cornett requested DOE fully fund J.B.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition and transportation. *See* ECF No. 1, ⁋ 181. The DPC was assigned IHO Case No. 297039. *See* ECF No. 1, ⁋ 184.

## KAMOLPORN LUMMAYOS, AS PARENT AND NATURAL GUARDIAN OF R.L.

On July 1, 2025, Plaintiff Lummayos brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-5. The DPC alleges DOE did not provide R.L. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored a request for direct payment of the unilateral placement.

3

*See* ECF No. 1, ⁋ 185. Plaintiff Lummayos requested DOE fully fund R.L.'s placement at iBRAIN, in accordance with the respective contracts for tuition, transportation, and nursing, through the "stay-put" provision under 20 U.S.C. § 1415(j). *See* ECF No. 1, ⁋ 186. The DPC was assigned IHO Case No. 296333. *See* ECF No. 1, ⁋ 189.

### CLAUDIA RIVAS, AS PARENT AND NATURAL GUARDIAN OF S.C.

On July 1, 2025, Plaintiff Rivas brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-6. The DPC alleges DOE did not provide S.C. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 190. Plaintiff Rivas requested DOE fully fund S.C.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition, transportation, and nursing. *See* ECF No. 1, ⁋ 191. The DPC was assigned IHO Case No. 295880. *See* ECF No. 1, ⁋ 194.

### SANDRA LEE, AS PARENT AND NATURAL GUARDIAN OF V.G.

On July 3, 2025, Plaintiff Lee brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-7. The DPC alleges DOE did not provide V.G. a FAPE for the 2025-2026 SY, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 195. Plaintiff Lee requested DOE fully fund V.G.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition and transportation. *See* ECF No. 1, ⁋ 196. The DPC was assigned IHO Case No. 296857. *See* ECF No. 1, ⁋ 199.

### CRYSAL CROSLEY, AS PARENT AND NATURAL GUARDIAN OF Z.C.

On July 7, 2025, Plaintiff Crosley brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-8. The DPC alleges DOE did not provide Z.C. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 200. Plaintiff Crosley requested DOE fully fund Z.C.'s pendency placement at iBRAIN,

in accordance with the respective contracts for tuition and transportation. *See* ECF No. 1, ⁋ 201. The DPC was assigned an IHO Case No. 297177. *See* ECF No. 1, ⁋ 204.

## MADELINE GRULLON, PARENT AND NATURAL GUARDIAN OF C.B.

On July 6, 2025, Plaintiff Grullon brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-9. The DPC alleges DOE did not provide C.B. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 205. Plaintiff Grullon requested DOE fully fund C.B.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition and transportation. *See* ECF No. 1, ⁋ 206. The DPC was assigned IHO Case No. 296999. *See* ECF No. 1, ⁋ 207.

## MARIA HIDALGO, PARENT AND NATURAL GUARDIAN OF L.S.

On June 30, 2025, Plaintiff Hidalgo brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-10. The DPC alleges DOE did not provide L.S. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 210. Plaintiff Hidalgo requested DOE fully fund L.S.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition, transportation, and nursing. *See* ECF No. 1, ⁋ 211. The DPC was assigned IHO Case No. 295779. *See* ECF No. 1, ⁋ 214.

## ADEJUMOKE OGUNLEYE, PARENT AND NATURAL GUARDIAN OF D.O

On July 3, 2025, Plaintiff Ogunleye brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-11. The DPC alleges DOE did not provide D.O. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 215. Plaintiff Ogunleye requested DOE fully fund D.O.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition and transportation. *See* ECF No. 1, ⁋ 216. The DPC was assigned an IHO Case No. 296850. *See* ECF No. 1, ⁋ 219.

## ROSA ELBA de PAULINO, PARENT AND NATURAL GUARDIAN OF R.P.

On June 27, 2025, Plaintiff de Paulino brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-12. The DPC alleges DOE did not provide R.P. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 220. Plaintiff de Paulino requested DOE fully fund R.P.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition and transportation. *See* ECF No. 1, ⁋ 221. The DPC was assigned IHO Case No. 295721. *See* ECF No. 1, ⁋ 224.

**MARTINE AND SCOTT THOMAS, PARENTS AND NATURAL GUARDIANS OF A.T.**

On June 27, 2025, Plaintiffs Martine Thomas and Scott Thomas (the "Thomas Plaintiffs") brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-13. The DPC alleges DOE did not provide A.T. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 225. Thomas Plaintiffs requested DOE fully fund A.T.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition and transportation. *See* ECF No. 1, ⁋ 226. The DPC was assigned IHO Case No. 295725. *See* ECF No. 1, ⁋ 229.

**SHANTEL TALLEY, PARENT AND NATURAL GUARDIAN OF A.C-T.**

On July 3, 2025, Plaintiff Talley brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-14. The DPC alleges DOE did not provide A.C-T. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 230. Plaintiff Talley requested DOE fully fund A.C-T.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition, transportation, and nursing. *See* ECF No. 1, ⁋ 231. The DPC was assigned an IHO Case No. 296926. *See* ECF No. 1, ⁋ 234.

**MARLENE VASQUEZ, PARENT AND NATURAL GUARDIAN OF L.C.**

On July 2, 2025, Plaintiff Vasquez brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-15. The DPC alleges DOE did not provide L.C. a FAPE, iBRAIN was an appropriate

unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 235. Plaintiff Vasquez requested DOE fully fund L.C.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition and transportation. *See* ECF No. 1, ⁋ 236. The DPC was assigned IHO Case No. 296729. *See* ECF No. 1, ⁋ 239.

## LINDA LARACH-COHEN, PARENT AND NATURAL GUARDIAN OF M.C.

On June 30, 2025, Plaintiff Larach-Cohen brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-16. The DPC alleges DOE did not provide M.C. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 240. Plaintiff Larach-Cohen requested DOE fully fund M.C.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition and transportation. *See* ECF No. 1, ⁋ 241. The DPC was assigned IHO Case No. 295795. *See* ECF No. 1, ⁋ 244.

## MARILYN BECKFORD, PARENT AND NATURAL GUARDIAN OF M.B.

On July 3, 2025, Plaintiff Beckford brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-17. The DPC alleges DOE did not provide M.B. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 245. Plaintiff Beckford requested DOE fully fund M.B.'s pendency placement at iBRAIN, in accordance with the respective contracts for tuition, transportation and nursing. *See* ECF No. 1, ⁋ 246. The DPC was assigned IHO Case No. 296879. *See* ECF No. 1, ⁋ 249.

## PATRICK DONOHUE, PARENT AND NATURAL GUARDIAN OF S.J.D.

On June 27, 2025, Plaintiff Donohue brought a DPC against DOE for the 2025-2026 SY. *See* ECF No. 1-19. The DPC alleges DOE did not provide S.J.D. a FAPE, iBRAIN was an appropriate unilateral placement, and equities favored direct payment of the unilateral placement. *See* ECF No. 1, ⁋ 250. Plaintiff Donohue requested DOE fully fund S.J.D.'s pendency placement

at iBRAIN, in accordance with the respective contracts for tuition, transportation, and nursing. *See* ECF No. 1, ‖ 251. The DPC was assigned IHO Case No. 295723. *See* ECF No. 1, ‖ 254.

## **LEGAL BACKGROUND**

Congress enacted the IDEA 'to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002)(quoting *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 68 (1999). Children are entitled to "an education 'likely to produce progress, not regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016)(quoting *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015); accord *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017)("a student offered an educational program providing 'merely more than *de minimis* progress from year to year can hardly be said to have been offered an education at all'").

"The 'centerpiece' of the IDEA and its principal mechanism for achieving this goal is the IEP," *i.e.*, Individualized Education Program. *T.K.*, 810 F.3d at 875. "The IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child. *Endrew F. ex rel. Joseph F.*, 580 U.S. 386 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 181 (1982). "Where the IEP is substantively deficient, parents may unilaterally reject it in favor of sending their child to private school and seek tuition reimbursement from the State." *T.K.*, 810 F.3d at 875. To challenge an IEP, a parent must first file a "due process complaint" detailing the alleged deficiencies of the IEP. *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014)(citing 20 U.S.C. § 1415(b)(7)(A), (f)(1). Following a 30-day resolution period, the parent and school district will participate in an

"impartial due process hearing" before an Independent Hearing Officer ("IHO"). *Id.* Under New York law, once the IHO renders a decision, any party aggrieved by the decision may request a review by a state review officer ("SRO"), who can affirm or modify the IHO's Order. *Id.* (citing N.Y. Educ. Law § 4404(1)-(2). After that, "[e]ither party may bring a civil action before a federal or state court to review the SRO's decision." 20 U.S.C. § 1415(i)(2)(A)).

During the pendency of the aforementioned judicial proceedings, the IDEA's "pendency provision" also known as the "stay put provision," codified at 20 U.S.C. § 1415(j), "entitles a disabled child to 'remain in his then-current educational placement.'" *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014)(quoting 20 U.S.C. § 1415(j). The core concern of the IDEA is to provide a continuous, uninterrupted education to disabled children; accordingly, the pendency provision "maintain[s] the educational *status quo*" of the child and ensures continuity of services while the parties' dispute is being resolved. See *id.* (citing *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004). "There is no separate requirement that a court determines the placement is appropriate; rather, the obligation arises automatically from a determination that the private school is the protected *status quo* during the period in which the dispute resolution process is ongoing." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123–24 (3d Cir. 2014)(quotation omitted). "The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy." *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005)(citing *Honig v. Doe*, 484 U.S. 305, 326–27 (1988); *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 556 (3d Cir. 2003).

Although the IDEA does not specify which party pays when a child's pendency placement is at a private school, "the school district's obligation to do so is well established by case law." *M.R.*,

744 F.3d at 118–19 (quotation omitted); *see also Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 87 (3d Cir. 1996)("[w]ithout interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private-school placement amounts to no choice at all."). The IDEA's pendency provision "therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015).

Determining a child's pendency placement requires the Court to identify the student's "then current educational placement." *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020). This term can mean either 1) the placement described in the student's most recently implemented IEP, 2) the operative placement actually functioning at the time when the due process proceeding was commenced, or 3) the placement at the time of the previously implemented IEP. *Doe*, 790 F.3d at 452. "The placement can [] be changed if an impartial hearing officer or state review officer finds the parents' new placement to be appropriate by adjudicating the IEP dispute in the parents' favor, and the school district chooses not to appeal the decision." *Ventura de Paulino*, 959 F.3d at 532.

## ARGUMENT

### I.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ESTABLISHING PLAINTIFF-STUDENTS' PENDENCY PLACEMENT AT iBRAIN FOR THE 2025-26 SCHOOL YEAR

Here, the "stay-put" provision of the IDEA acts as an automatic preliminary injunction. The IDEA's "stay put" provision in 20 U.S.C. § 1415(j) provides that: [e]xcept as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents agree otherwise, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a

public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed. 20 U.S.C. § 1415(j). "[T]he stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process." *Mackey*, 386 F.3d at 160–61 (quotation omitted). The "stay put" provision "is, in effect, an automatic preliminary injunction." *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). "[I]mplicit in the maintenance of the *status quo* is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested the due process hearing." *Id.*

"The IDEA's stay-put provision is triggered when a change in placement is proposed; a fundamental change in, or '*elimination of, a basic element of the educational program*'" constitutes a change in placement." *Spilsbury v. D.C.*, 307 F. Supp. 2d 22, 27 (D.D.C. 2004)(emphasis in the original)(quoting *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984). Further, an aggrieved family need not seek a pendency order through the administrative process and may instead enforce their pendency rights via injunctive order from a federal court. *Spilsbury*, 307 F. Supp. 2d at n.1 (noting that plaintiffs "sought, and won, injunctive relief from this Court in the form of IDEA "stay-put" protection); *see also C.P. by Curtis v. Kankakee Cmty. Unit Sch. Dist.*, No. 05-2145, 2005 WL 8163374 (C.D. Ill. Aug. 29, 2005)(noting that because there is no exhaustion of administrative remedies requirement to 20 U.S.C. § 1415(j), a federal court has jurisdiction to issue a "stay-put" or "pendency" order pending the outcome of the due process hearing).

Under the IDEA, a child's pendency placement is established by looking to either 1) the placement described in the student's most recently implemented IEP, 2) the operative placement actually functioning at the time when the due process proceeding was commenced, or 3) the placement at the time of the previously implemented IEP. *Doe*, 790 F.3d at 452. Moreover, "once the parents' challenge to a proposed IEP succeeds, consent to the private placement is implied by

11

law, and the requirements of the stay-put provision become the responsibility of the school district."
*See Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 483-84 (2d Cir. 2002)(cleaned up).

Plaintiffs bring this action to enforce Plaintiff-Students' pendency rights for the 2025-26 SY, under Section 1415(j) of the IDEA, as established by previous final administrative decisions. These administrative decisions create an agreement as to each Plaintiff-Students' stay put placement that is implied by law for the 2025-26 SY. *See Bd. of Educ. of Pawling Cent. Sch. Dist.*, 290 F.3d at 483-84. In these decisions, it was determined that Plaintiffs were entitled to direct funding of tuition, transportation and nursing services, where applicable, based on the agreements, respectively. Pursuant to the clear mandate of 20 U.S.C. § 1415(j), this placement at iBRAIN with transportation and nursing services, where applicable, are the basis of each Plaintiff-Students' pendency program/placement throughout the administrative and judicial proceedings relative to the 2025-26 SYs.

Placement and funding go hand-in-hand. *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78 (3d Cir. 1996). Indeed, placement includes funding, particularly where pendency lies in a private school or private placement. In *Zvi D,* the Second Circuit stated:

> Implicit in the maintenance of the *status quo* is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act.

*Zvi D. by Shirley D.*, 694 F.2d at 906.

Furthermore, in *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112 (3d Cir. 2014), the Third Circuit held: "[W]e have expressly held that financing goes hand-in-hand with pendent private school placement: It is undisputed that once there is a state agreement concerning pendent placement, *a fortiori*, financial responsibility on the part of the local school district follows." *M.R.*, 744 F.3d at 123.

12

The notion that payment and placement go hand-in-hand harmonizes with the holdings of *Burlington* and its progeny as dispute resolution processes continue, whether or not the parent's claims are meritorious. *See Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036 (9th Cir. 2009)("It is unlikely that Congress intended the protective measure to end suddenly and arbitrarily before the dispute is fully resolved."); *Mackey ex rel. Thomas M.*, 386 F.3d at 160–161 (*quoting Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996)("[T]he stay-put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process.").

The relative tuition, transportation and nursing services, where applicable, agreements are included as part of the Students' DPCs for the 2025-26 SYs and set the annual costs to be paid in three separate installments over the course of the 2025-26 SYs. Included in these agreements are tuition, transportation and nursing Late Fees, if the payment obligations are delayed. The DOE has contested the pendency payments in violation of 20 U.S.C. § 1415(j) and have granted themselves a stay of these obligations. Each of the administrative orders that establishes pendency imposed payment obligations on the basis of the relevant contracts for tuition, transportation and nursing, as applicable.

Even in cases where the relevant administrative order compels the DOE to pay "costs" associated with a given service, courts in this jurisdiction have awarded the full value of the contract. *See Paulino v. N.Y.C. Dep't of Educ.*, 2024 U.S. Dist. LEXIS 132633, at *14-15 (S.D.N.Y. July 24, 2024)("Courts in this District applying similar language in pendency orders have interpreted this wording in a manner consistent with this holding.")(collecting cases). As *Paulino* explained,

> The requirement that the DOE "pay the tuition and transportation costs for the STUDENT'S attendance" is best read as a directive to pay for the total transportation costs incurred during the pendency period. *Id.* The FOFD refers generally to transportation costs—not to the

13

transportation costs for services "actually provided," or any other such qualification. There is no textual basis to read such a qualification into the order's language.

2024 U.S. Dist. LEXIS 132633 at *14-15. Here, the relevant final administrative orders are even more direct – they made payment amounts and obligations explicitly based on the contracts themselves. No further interpretation, not even of the kind that was favorable to the parents in *Paulino*, is needed.

Plaintiffs are therefore undeniably entitled to pendency placement at iBRAIN with the full value of tuition, transportation and nursing services, where applicable, as provided in their respective agreements, because that was the last agreed upon placement at the time each Plaintiff filed their DPC. Accordingly, Plaintiffs are entitled to a pendency order under 20 U.S.C. § 1415(j)'s "automatic injunction" standard and are entitled to a preliminary injunction ordering DOE to fund the Students' Pendency placements/programs in accordance with their agreements during 2025-2026 SY.

**II.    PENDENCY ACTS AS AN AUTOMATIC PRELIMINARY INJUNCTION THAT REQUIRES DEFENDANTS TO FUND PLAINTIFFS' EDUCATIONAL PLACEMENT DURING THE DUE PROCESS PROCEEDINGS**

Plaintiffs are entitled to a preliminary injunction to order DOE to fund Plaintiff-Students' pendency at iBRAIN with the transportation and nursing related services, as required, for the 2025-26 SYs. These Plaintiffs are entitled to an order that the DOE make payments, irrespective of whether Plaintiffs can show irreparable harm. A similar issue was brought up in *Araujo v. N.Y.C. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 175767 (S.D.N.Y. Sep. 24, 2020), where the court issued a preliminary injunction ordering the DOE to fund tuition for the 2020-21 school year, none of which payments had been made up to that point. *See Araujo*, 2020 U.S. Dist. LEXIS 175767 at *9-11. The court rejected the defendant's argument that the plaintiffs had not shown irreparable harm, reasoning,

Plaintiffs seek immediate vindication of their undisputed rights to pendency funding via

14

> preliminary injunction. They correctly note that the stay-put provision typically operates as an "automatic injunction" foreclosing consideration of irreparable harm and the other factors of the traditional preliminary injunction inquiry, and thus that an injunction should issue as a matter of course. *Ventura*, 959 F.3d at 529. Accordingly, a preliminary injunction granting pendency funding for the thirteen students the parties agree have pendency at iBRAIN is warranted.

2020 U.S. Dist. LEXIS 175767 at *10.

The DOE's failure to fund Plaintiff-Students' pendency placements for the 2025-26, under the IDEA's "stay put" provision, resembles the failures that the *Araujo* court rectified with a preliminary injunction. Like *Araujo*, the agreement implied by law, compels the DOE to make pendency payments in full, and the DOE's failure to do so is a violation of the IDEA's "stay put" provision. *See Bd. of Educ. of Pawling Cent. Sch. Dist.*, 290 F.3d at 483-84 ("[O]nce the parents' challenge [to a proposed IEP] succeeds … consent to the private placement is implied by law, and the requirements of [the stay-put provision] become the responsibility of the school district."). This compels the DOE to fully fund pendency placement costs for the 2025-26, in accordance with the respective tuition, transportation and nursing services agreements under the IDEA's "stay put" provision. *See M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123 (3d Cir. 2014)("financing goes hand-in-hand with pendent private-school placement: It is undisputed that once there is a state agreement with respect to pendent placement, *a fortiori*, financial responsibility on the part of the local school district follows."); *see also Mendez v. Banks*, 65 F.4th 56, 62-63 (2d Cir. 2023)(agreeing with the proposition that "funding goes hand-in-hand with placement.").

At the very least, Plaintiffs are entitled to a preliminary injunction determining the scope of pendency for the 2025-26 SY, including associated tuition, transportation and nursing Late Fees, irrespective of whether Plaintiffs are entitled to a preliminary injunction compelling *immediate* payment. A similar issue was addressed in *Moonsammy v. Banks*, 2024 U.S. Dist. LEXIS 99415 (S.D.N.Y. June 3, 2024). In that case, the parties disputed whether a partially appealed SRO decision could constitute pendency placement with regard to those aspects of the decision that were

15

left unchallenged. *See Moonsammy*, 2024 U.S. Dist. LEXIS 99415 at \*16-18. The court held that it could, and found that the SRO's determinations on prongs I and II of *Burlington/Carter*, which were not implicated in the parents' appeal, specifically, that the DOE had denied the student a FAPE and that iBRAIN was an appropriate placement, could form the basis of pendency. *Id.* at \*18. The court found that this holding was "consistent with the purpose of the stay-put provision— 'to maintain the child's educational *status quo*.'" *Id.* at \*19-20 (quoting *Ventura de Paulino*, 959 F.3d at 529, 532). Finally, "[b]ecause the stay-put provision operates as 'an automatic preliminary injunction," the court found, over the DOE's objection, that the parents "are entitled to a preliminary injunction requiring the Department to fund the services granted by SRO Bates's decision—namely, A.M.'s (1) tuition and (2) transportation to and from school." *Id.* at \*20. Nevertheless, consistent with *Mendez*, the court declined to issue a preliminary injunction ordering the DOE to pay these amounts immediately. *See Moonsammy*, 2024 U.S. Dist. LEXIS 99415 at \*20-21 (citing *Mendez*, 65 F.4th at 63).

Here, while there is an agreement implied by law in accordance with the unappealed final administrative orders establishing the legal basis for pendency, the DOE is nevertheless disputing pendency by virtue of its challenge as to the full scope of pendency payments due and owing for the 2025-26 SY, including, as relevant here, its obligation to pay late fees under each of the relevant tuition, transportation and nursing agreements. If the DOE is obligated to pay the full value of the respective agreements for tuition, transportation and nursing services because it was so ordered by the relevant administrative order, *see Paulino*, 2024 U.S. Dist. LEXIS 132633, at \*14-15, *a fortiori* the DOE is responsible for *all fees* by the terms of those agreements. *See e.g. Fannie Mae v. 204 Ellery St.*, LLC, No. 23 CV 5343 (ENV)(RML), 2025 U.S. Dist. LEXIS 40829, at \*30-31 (E.D.N.Y. Mar. 6, 2025)(report and recommendation finding that the defendant is liable for late fees for delinquent payments by the terms of a loan agreement); *see also Canon U.S.A., Inc. v. Sysorex*

16

*Gov't Servs., Inc.*, No. 2:23-cv-8001 (DLI)(LGD), 2024 U.S. Dist. LEXIS 79881, at *17-18 (E.D.N.Y. May 1, 2024)(report and recommendation finding that the defendant is liable for $57,410.62 in late fees for delinquent payments, pursuant to the relevant agreements).

Therefore, in line with *Moonsammy*, this Court should order a preliminary injunction entitling Plaintiffs to a determination as to the scope of pendency the DOE is obligated to pay in accordance with the legal basis for pendency, specifically, the question of whether the DOE is required to pay the tuition, transportation and nursing costs for the 2025-26 SY in accordance with their respective agreements.

Any response by the DOE to dispute its obligation to make any pendency payments for the 2025-26 SY, while it determines whether or not to appeal any relevant SRO decisions, which may be the legal basis for pendency, during the four-month window to appeal under New York law is wrong as a matter of law.  While parents under the IDEA do enjoy the protections of pendency during the appeals process, compelling the DOE to continue making payments while a given appeals period is pending, *see H.W v. Comal Indep. Sch. Dist.*, 2021 U.S. Dist. LEXIS 76247, 2021 WL 1566453, at *8 (W.D. Tex. April 21, 2021)("Properly interpreted, 'pendency of any proceedings conducted pursuant to [§ 1415],' as used in § 1415(j), encompasses the entirety of the administrative and judicial process. The administrative process remains pending during the time for appeal."), no such protection is enjoyed by the DOE itself.  *See Willis v. Adult & Prison Educ. Res. Workshop*, Civil Action No. 22-1615-SRF, 2025 U.S. Dist. LEXIS 120061, at *5-6, *10-11, *12-13 (D. Del. June 24, 2025)(denying a motion to stay a hearing panel's favorable decision for the parents and ordering the school district to make pendency payments while it appeals the decision, noting particularly that "[t]o rule otherwise 'would mean that the panel decision[s] in favor of the [Students are] of no practical significance until [they are] affirmed by a decision that cannot be or is not appealed.'")(quoting *Susquenita*, 96 F.3d at 84-85 (concluding that "the policies

underlying the IDEA … favor imposing financial responsibility upon the local school district as soon as there has been an administrative panel or judicial decision establishing the pendent placement.")(citing *Drinker*, 78 F.3d at 864-65 (explaining that the stay-put provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved.").

It is well-established that "the sole source of the DOE's reimbursement obligations in each Plaintiff's case is the applicable administrative order." *See Davis v. Banks*, No. 22-CV-8184 (JMF), 2023 U.S. Dist. LEXIS 160092, at *13 (S.D.N.Y. Sep. 11, 2023)(collecting cases and citing *Ventura de Paulino*, 959 F.3d at 532 ("observing that the DOE's 'legal responsibility to pay' arose from the final, unappealed administrative order.")(as interpreted by *Davis*).  As their respective unappealed final administrative orders unequivocally establish, Plaintiff-Students are entitled to the full value of tuition, transportation and nursing services in accordance with the respective agreements. The DOE's position challenging that fact entitles Plaintiffs to a preliminary injunction from this Court determining the scope of pendency owed by the DOE. *See Moonsammy*, 2024 U.S. Dist. LEXIS 99415 at *18-20.

The Second Circuit has characterized § 1415(j) as "an automatic preliminary injunction … ." *Mendez*, 65 F.4th at 62; *Zvi D. by Shirley D.*, 694 F.2d at 906.  The Second Circuit's holding in *Mendez*, *to wit*, that the IDEA's stay-put provision does not entitle families to expedited payment of pendency funding, does not alter the fact that families, like Plaintiffs, are entitled to automatic implementation of pendency. *Mendez*, 65 F.4th at 59.  Here, Plaintiff is not asking for immediate funding of pendency.  DOE was aware of its obligations to pay pendency when Plaintiffs filed their respective Ten Day Notices ("TDNs") a month ago and the filing of their respective DPCs.

The point of the ruling in *Mendez* was that, when DOE does not contest pendency, parents

are not entitled to "fast-track" payments; DOE may make payments in its "ordinary course of business." The Court noted that DOE had indicated "that it [was] committed to making the requisite payments and will do so voluntarily in the ordinary course of business, without the need for Court intervention . . . ." *Mendez*, 65 F.4th at 60 (internal citation and quotation marks omitted)(alteration in original).

Here, Plaintiffs are not asking the Court to order the DOE to "fast-track" payments, or otherwise "frustrat[e]" DOE's "fiscal policies. The Plaintiffs are simply requesting the Court to require payments in a reasonable time and in accordance with the respective tuition, transportation and nursing service agreements. In *LV v. NYC DOE*, No. 03-CV-09917 (LAP), Judge Loretta A. Preska ordered: "In December 2007, AFC and Milbank, on behalf of Lead Plaintiffs and the Class, entered into a settlement agreement with the DOE that provides injunctive and compensatory relief to class members. The Settlement was approved by the Honorable Richard J. Holwell at the Settlement Fairness Hearing held on April 10, 2008. Under the settlement, the DOE is required to implement all impartial hearing orders within the time frame stated in the order or 35 calendar days of the date of the order if no time is specified. Orders that require immediate action must be implemented within 7 business days."[3] Furthermore, Judge Preska issued an order in the *LV* class action: "DOE's only lawful course of action is to implement those Orders, full stop." No. 03-CV-09917-(LAP), ECF #258 (February 18, 2021).

According to the public testimony of DOE General Counsel, Liz Vladeck, at a NYC Council meeting on January 30, 2025, Ms. Vladeck testified about the DOE's "normal due course" of issuing payments that once a payment is authorized: payment is made the same day or within a day. Ms. Vladek was asked to describe how the *LV* litigation relates to the DOE's current funding process, and responded:

---

[3] See https://advocatesforchildren.org/case/l-v-v-nyc-department-of-education/

"1:48:12 So the LV litigation covers, due process cases.

1:48:16 So once an impartial hearing officer makes a decision, issues an order saying here's what DOE has to do to implement the IEP or IESP.

1:48:26 The case goes over to the implementation team on in within the office of the general counsel, which has to break down the decision from the hearing officer, make sure it's clear what relief has been requested, seek certain authorizations, whether it's from providers, parents, or attorneys, make sure we've got a clear basis for what it is we'd be paying for, and then move forward to authorize those payments.

1:48:51 That process then moves over to the division of financial operations, which my understanding is, is getting payments out the day they receive our authorization or within a day."[4],[5]

Moreover, unlike *Mendez*, where the DOE fully acknowledged its pendency obligations and promised it would pay, the DOE disputes the full scope of the pendency obligations owed. Indeed, *Mendez* relied in part on *Abrams v. Porter*, No. 20-3899-cv, 2021 U.S. App. LEXIS 36362 (2d Cir. Dec. 9, 2021). The Second Circuit noted of that case, "Because 'both sides agreed that there was no risk of the students losing their pendency placement,' the Court held that 'the district court did not abuse its discretion in denying an injunction under the IDEA's stay-put provision.'" *Mendez*, 65 F.4th at 63 (quoting *Abrams*, No. 20-3899-cv, 2021 U.S. App. LEXIS 36362 at *6). Here, neither side agrees to the scope of pendency. The DOE has pointedly disputed that it owes pendency payments in accordance with the respective tuition, transportation and nursing service agreements for the 2025-26 SY. This establishes precisely the kind of dispute that was envisioned

---

[4] See https://citymeetings.nyc/meetings/new-york-city-council/2025-01-30-0100-pm-committee-on-education/chapter/does-current-process-for-paying-providers/
[5] See https://citymeetings.nyc/meetings/new-york-city-council/2025-01-30-0100-pm-committee-on-education/chapter/timeline-expectations-for-non-delayed-payments/

in *Mendez* and corrected in *Moonsammy*. Thus, even if it could be said that Plaintiffs are somehow attempting to "fast track" immediate payments in violation of *Mendez*, which Plaintiffs deny, even under *Mendez* itself, Plaintiffs are entitled to a preliminary injunction determining the scope of pendency.

### III.   PLAINTIFFS' PENDENCY CLAIMS FOR 2025-26 SCHOOL YEAR SATISFY THE TRADITIONAL PRELIMINARY INJUNCTION STANDARD.

The traditional preliminary injunction standard does not apply when assessing pendency claims under 20 U.S.C. § 1415(j). Even so, Plaintiffs are entitled to injunctive relief under the traditional standards for the enforcement of the Plaintiff-Students' pendency rights for the 2025-2026 SY. A party seeking injunctive relief through a preliminary injunction must establish 1) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party, 2) irreparable harm, and 3) that a preliminary injunction is in the public's interest. *Connecticut State Police Union v. Rovella*, 36 F.4th 54, 62 (2d Cir.), *cert. denied,* 143 S. Ct. 215 (2022). In the Second Circuit, the Court may apply a less strict "serious questions" standard compared to a "likelihood" standard, depending on whether the case warrants this standard. *See Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 32 (2d Cir. 2010). Each of these prongs is satisfied in the matter at hand.

### A.   Likelihood of Success on the Merits.

Plaintiffs can show a likelihood of success on the merits for Plaintiff-Students' pendency claims for the 2025-26 SY because **every** special education student is entitled to pendency as a matter of law. *T.M. ex rel. A.M.*, 752 F.3d at 152; *Mackey ex rel. Thomas M.*, 386 F.3d at 163; *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 325 (S.D.N.Y. 2005). Plaintiffs can show a likelihood of success on the merits because each Plaintiff-Student has a final, unappealed administrative orders that was issued in their favor, establishing a success on

21

the merits. Moreover, Plaintiff-Students' educational programs at iBRAIN fulfill the baseline educational requirements for pendency or otherwise, and so, by extension, does transportation and nursing services provided to Plaintiff-Students in accordance with their respective tuition, transportation and nursing agreements for the 2025-2026 SY. *T.M. ex-rel. A.M.*, 752 F.3d at 152.

Plaintiffs filed their DPCs for the 2025-2026 SY, triggering DOE's legal obligation to ensure Plaintiff-Students "stays put" in their current educational placements through the pendency of the due process proceedings, including these judicial proceedings relative to the DPCs. Plaintiffs are likely to succeed on the merits because they already have.

**B.    Irreparable Harm.**

Irreparable harm is presumed in pendency-related cases. *Honig v. Doe*, 484 U.S. 305, 328 n.10 (1988). This is because the IDEA's stay-put provision functions as an automatic preliminary injunction, which implies that it substitutes an absolute rule in favor of maintaining the *status quo* for the court's discretionary consideration of factors such as irreparable harm and likelihood of success on the merits. The Second Circuit has consistently upheld this principle, as seen in *Zvi D. by Shirley D.*, 694 F.2d 904, where the Court stated that the stay-put provision is, in effect, an automatic preliminary injunction that does not require a showing of irreparable harm. *Zvi D. by Shirley D.*, 694 F.2d at 905; *see also Angamarca v. New York City Dept. of Educ.*, No. 19 CIV. 2930 (PGG), 2019 WL 3034912, at *1 (S.D.N.Y. July 11, 2019).

Plaintiffs will suffer two forms of irreparable injury if the DOE does not fully implement their Plaintiff-Students' pendency placements for the 2025-26 SY in accordance with their respective tuition, transportation and nursing service agreements: 1) a continued violation of their procedural rights outlined in § 1415(j), and 2) the subsequent financial repercussions of these continued violations.   The DOE cannot shirk its legal obligation to provide the pendency

placements to which Plaintiff-Students are legally entitled. If they do, Plaintiffs will suffer irreparable harm as they will be denied their statutorily protected rights.

###   C.   The Balance of Equities Favors Injunctive Relief.

The equities favor injunctive relief here as Plaintiffs have followed the necessary steps in filing their DPCs with the respective administrative authority and complied in providing all documents and information required to establish iBRAIN as their pendency programs/placements for the 2025–2026 school year—iBRAIN is each Plaintiff-Student's last agreed-upon educational placement, along with the transportation and nursing related services, when Plaintiffs filed their DPCs.

An injunction directing DOE to fund Plaintiff-Students' pendency placements in accordance with their respective tuition, transportation and nursing service agreements will in no way prejudice DOE; it is required to do so by a binding administrative order. Thus, the balance of the equities favors Plaintiffs.

While the Plaintiffs here seek relief that relates to the DOE's enforcement of the IDEA for the 2025-26 SY, courts considering IDEA claims, like those raised here, continue to apply the traditional standard by evaluating both the balance of the equities and the public interest. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020); *Araujo v. N.Y. City Dep't of Educ.*, No. 20-cv-7032 (LGS), 2020 WL 5701828, at *2 (S.D.N.Y. Sept. 24, 2020); *see also V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554, 581 (N.D.N.Y. 2017).

The balance of the equities weighs sharply in favor of the Plaintiffs on enforcement claims for the 2025-26 SY. The harm to Plaintiffs is immediate and irreparable: the denial of educational services for their children, as detailed in the final, binding administrative orders. Plaintiffs are not requesting extraordinary relief—they only seek to enforce final orders that entitle their children to essential services under the IDEA. The DOE's failure to comply with these final orders jeopardizes

the Students' educational programs/placements, deprives them of necessary services, accommodations, and transportation and nursing services, and risks permanent setbacks in their development. By contrast, the DOE faces no comparable hardship. Complying with its uncontroverted obligations under these final orders is a statutory mandate, not an undue burden.

**D.      Injunctive Relief Under the IDEA is in the Public's Interest.**

Here, a pendency order issued under the IDEA's stay-put provision, § 1415(j)—functioning as an automatic injunction as a matter of law based on each Student's last agreed-upon educational placement—is both appropriate and in the public's interest. The Congressional purpose in adopting the Education for All Handicapped Children Act (20 U.S.C. § 1400, *et seq.*), the precursor to IDEA, was to remedy the condition of children with disabilities who were not receiving education appropriate for their needs. To that end, Congress provided federal funding to state and local school systems for special education purposes and conditioned the grant of funds in compliance with federal standards. *Dubois v. Connecticut State Bd. of Educ.*, 727 F.2d 44 (2d Cir. 1984).  Federal law ensures that the rights of students with disabilities, and their parents/guardians, are protected. *Forest Grove School Dist.*, 557 U.S. at 239; *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07.  When a student with disabilities is placed at a non-public school before the filing of a DPC, the student shall receive pendency funding while the related administrative disputes are resolved. *Gabel ex rel. L.G.*, 368 F. Supp. 2d at 324.  Protecting the rights of students with disabilities to a FAPE is in the public interest, as expressed by Congress and the courts.

The public interest also strongly supports granting injunctive relief on Plaintiffs' enforcement claims. The IDEA was enacted to ensure that children with disabilities receive the educational services necessary for meaningful progress. Courts have consistently recognized that enforcing statutory obligations under the IDEA serves the public interest by protecting the educational rights

of children who are uniquely vulnerable. *See Ventura de Paulino*, 959 F.3d at 529; *V.W. by and through Williams*, 236 F. Supp. 3d 554. Moreover, the protections of the IDEA are rooted in the Constitution's Equal Protection Clause, which underscores the public's vested interest in upholding these rights. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 198 (1982)(noting that the IDEA was enacted to assist states in fulfilling their constitutional responsibilities under the Equal Protection Clause).

**CONCLUSION**

Given the dispute that is plainly apparent between Plaintiffs and the DOE in terms of what constitutes pendency for the 2025-2026 school year, including, as relevant here, Plaintiffs' entitlement to direct funding of tuition, transportation and nursing services in accordance with their respective agreements, Plaintiffs are entitled to a preliminary injunction ordering the DOE to fully fund tuition, transportation and, for some, nursing services for Students for the 2025-2026 school year, including any outstanding or future, disputed amount attributed to any Late Fees associated with the untimely payment and withholding of funding by DOE, in accordance with their respective tuition, transportation and nursing service agreements. The DOE's failure to pay is a *de facto* dispute of Students' pendency rights under the IDEA's "stay put" provision that entitles Plaintiffs to a preliminary injunction declaring the full scope of Plaintiffs' pendency rights under 20 U.S.C. § 1415(j).

Dated:  July 15, 2025
     New York, New York

                         Respectfully submitted,
                         Liberty & Freedom Legal Group
                         *Attorneys for Plaintiff*

By:   */S/ Nicholas A. Marricco*
        Nicholas A. Marricco, Esq.
        105 East 34th Street, #190
        New York, NY 10016
        (646) 850-5035
        nick@pabilaw.org

25