

LIBERTY & FREEDOM
LEGAL GROUP, LTD



April 17, 2026

**VIA ECF**

Hon. Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *Bruckauf et al. v. Aviles-Ramos et al.*, 25-cv-05679 (KPF)

Dear Judge Failla:

Plaintiffs respectfully submit this emergency letter motion under Fed. R. Civ. P. 62.1. Plaintiffs do not ask this Court to disregard the pending appeal. Because Plaintiffs' interlocutory appeal from the Court's September 2, 2025 Order remains pending before the Second Circuit, Plaintiffs seek only the relief Rule 62.1 permits: a statement that the Court would grant targeted emergency relief if the Court of Appeals remands for that purpose, or, at a minimum, that this motion raises a substantial issue. See Fed. R. Civ. P. 62.1(a)(3).

Because the filing of Plaintiffs' notice of interlocutory appeal vested jurisdiction in the Second Circuit, this Court currently lacks authority to grant substantive relief on Plaintiffs' pending motion. Federal Rule of Civil Procedure 62.1 provides an established mechanism: this Court may issue an indicative ruling stating that it would grant the motion, or that the motion raises a substantial issue, so that Plaintiffs may then seek a remand under Federal Rule of Appellate Procedure 12.1. Plaintiffs invoke that mechanism here. Fed. R. Civ. P. 62.1; Fed. R. App. P. 12.1; see also *C.Q. v. River Springs Charter Schs.*, No. CV 18-cv-1017 SJO, 2018 WL 7461689, at *3 (C.D. Cal. Nov. 27, 2018). The structure of this application follows the same Rule 62.1 framework Plaintiffs previously used in the March 28, 2026 Bruckauf Rule 62.1 filing.

This application is prompted by post-order developments that did not exist when the Court ruled. On September 2, 2025, the Court denied Plaintiffs' motion for a preliminary injunction "[f]or the reasons stated on the record at the August 14, 2025 telephonic conference." ECF No. 20. The accompanying Declaration of Zeal Patel establishes that, after that ruling and while the broader appeal in No. 25-2127 remained pending, iBRAIN's Chief Operating Officer advised families on April 15, 2026 that "due to current staffing limitations, school will be closed tomorrow," and that iBRAIN was "actively working to stabilize staffing and operations." Patel Decl. ¶¶ 4–6 & Ex. 1. Patel further establishes that, before that school-closure notice was sent, Erin McGuinness, Esq. had been informed by iBRAIN's in-house counsel that DOE's continued withholding of pendency funding had placed iBRAIN's entire program in jeopardy, that iBRAIN lacked sufficient funds to cover payroll due on April 15, 2026 for more than 200 staff members, and that iBRAIN had

received rent demand letters from two landlords. Patel Decl. ¶¶ 9–12. Those developments are no longer a prediction of possible harm. They are actual collapse facts affecting the Plaintiff-Students' ability to access school.

### 1. Plaintiffs Preserve Their Position that Irreparable Harm Is Not Required for Stay-Put Relief

Plaintiffs respectfully maintain that irreparable harm is not required to enforce the Individuals with Disabilities Education Act's ("IDEA") stay-put rights. The Supreme Court has long recognized that § 1415(j) reflects Congress's deliberate judgment to remove discretion from school districts during disputes over a child's placement. See *Honig v. Doe*, 484 U.S. 305, 323 (1988). Consistent with *Honig*, the Second Circuit has repeatedly held that pendency operates as an automatic preliminary injunction and substitutes an absolute rule in favor of the status quo for a court's discretionary consideration of irreparable harm, likelihood of success, and the balance of hardships. *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). Thus, when a parent seeks enforcement of an established pendency placement, the ordinary Rule 65 inquiry does not govern. This same position was presented in Plaintiffs' prior Rule 62.1 filing.

These authorities do not conflict with *Mendez*. In *Abrams v. Carranza*, No. 19-CV-4175 (AJN), 2019 WL 2385561, at *2–4 (S.D.N.Y. June 6, 2019), then-District Judge Nathan reiterated that, in the pendency context, "the preliminary injunction analysis is truncated," because § 1415(j) functions as an "automatic preliminary injunction" that displaces the ordinary irreparable-harm and balancing inquiry. Four years later, writing for the Second Circuit in *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023), Judge Nathan did not retreat from that principle; she held only that § 1415(j) does not require DOE to "automatically fast-track funding" in every case, while expressly preserving relief where "a delay or failure to pay has jeopardized their child's educational placement." *Mendez*, 65 F.4th at 64. Read together, *Abrams* and *Mendez* establish continuity, not conflict: pendency remains automatic, but where DOE's delay jeopardizes implementation of the placement, judicial relief remains available. Plaintiffs' appellate briefing in 25-2127 presses that same broader stay-put and unlawful-self-stay theory.

Nor can DOE plausibly characterize the present request as an attempt to "fast-track" payment. In October 2025, Plaintiffs advised this Court that without immediate relief iBRAIN would be unable to meet payroll obligations due on October 15, 2025, that iBRAIN's monthly payroll exceeded $1,000,000 exclusive of rent and other operational expenses, and that the situation placed the entire program at risk of collapse. ECF No. 30 at 7–8. Dr. Sebbag's declaration in the same filing stated that the total amount then owed across the referenced matters, including the instant matter, exceeded $14.9 million, and that those withheld amounts included essential payments for tuition, transportation, and nursing services critical to ensuring that iBRAIN and related service providers could continue providing mandated services. ECF No. 31 ¶ 10. At this point, after months of DOE delay and after the actual school closure described in the Patel Declaration, it would defy credulity to describe Plaintiffs' request as one for accelerated payment rather than a request to prevent DOE from defeating pendency through prolonged nonpayment.

### 2.    This Court Erroneously Applied an Irreparable-Harm Standard and Consequently, Denied Relief

Although Plaintiffs preserve the foregoing legal position, the Court took a different view and denied preliminary injunctive relief. The September 2, 2025 order expressly denied the PI "[f]or the reasons stated on the record at the August 14, 2025 telephonic conference." ECF No. 20. And the August 14 transcript reflects that the Court stated: "I don't think you've—the facts of this case warrant injunctive relief under the traditional four-factor test. I don't see irreparable harm. I'm not—I just don't." Aug. 14, 2025 Hr'g Tr. 19. The Court also stated: "You haven't proven irreparable harm. Under *Mendez*, you need to show that the student is—that there's some possible—there's nothing here suggesting irreparable harm." Id. at 20. The Court then stated: "So I'm not going to grant the request for preliminary injunctive relief." Id. at 20–21.

Those are the standards the Court chose to apply. The factual premise has now changed. What the Court previously viewed as insufficiently concrete is no longer merely prospective. iBRAIN has now advised families that school would be closed due to current staffing limitations. Patel Decl. ¶¶ 4–6 & Ex. 1. What Plaintiffs previously presented as imminent operational risk has now matured into actual educational disruption.

### 3.    The Court's September 2, 2025 Ruling Is Now Confronted with Actual Program Collapse, Not Prospective Harm

The broadest and most important post-order development is the collapse of the iBRAIN program itself. The Patel Declaration establishes that on April 15, 2026, iBRAIN's COO told families that, "due to current staffing limitations, school will be closed tomorrow," and that iBRAIN was working to stabilize staffing and operations. Patel Decl. ¶¶ 4–6 & Ex. 1. That is actual educational disruption.

Those facts are the realized version of what Plaintiffs had already warned this Court about in October 2025. At that time, Plaintiffs advised this Court that, without immediate relief, iBRAIN would be unable to meet payroll due on October 15, 2025, that monthly payroll exceeded $1,000,000, and that the program risked collapse. ECF No. 30 at 7–8. Dr. Sebbag declared that DOE's delays were jeopardizing iBRAIN's ability to sustain operations, provide critical services, and fulfill its mission to support medically fragile students; that DOE's continued nonpayment had placed iBRAIN "in a dire financial position"; and that without immediate relief iBRAIN would be unable to meet payroll obligations, which placed the entire program at risk of collapse. ECF No. 31 ¶¶ 3–4, 21, 23. Dr. Sebbag further stated that failure to pay staff and cover operational costs would force iBRAIN to "reduce or suspend services," leaving medically fragile students without the care and education to which they are legally entitled. Id. ¶ 24. He also stated that DOE's delays in funding jeopardized access to essential services such as transportation, nursing care, and therapy, and warned that iBRAIN could be forced into a financial crisis resulting in closure of the program and displacement of more than 50 vulnerable students. Id. ¶¶ 26, 29.

The Patel Declaration now adds that Erin McGuinness, Esq. was informed by iBRAIN's in-house counsel that DOE's continued withholding of pendency funding, together with the absence of timely judicial intervention, had placed iBRAIN's entire program in jeopardy; that iBRAIN lacked

sufficient funds to cover payroll due April 15, 2026 for more than 200 staff members; and that iBRAIN had received rent demand letters from two landlords. Patel Decl. ¶¶ 9–12. Those facts do not describe possible future strain. They describe current operational collapse.

For the Plaintiff-Students in this action, the consequence is direct. Their pendency rights are meaningful only if the school and services that comprise those placements remain available in practice. When DOE's prolonged nonpayment contributes to staffing collapse and school closure, pendency is defeated in operation even if recognized on paper.

### 4.    DOE's Continuing Self-Stay Is Unlawful

Plaintiffs have already placed before this Court the core point that DOE's nonpayment functions as an unlawful self-stay. The same conclusion follows from the prospective funding authorities. In *Susquenita Sch. Dist. v. Raelee S. by & through Heidi S.*, 96 F.3d 78 (3d Cir. 1996), the Third Circuit held that once there is an administrative or judicial decision vindicating the parents' position, "the school district's financial responsibility should begin," because without interim financial support the right to remain in the placement becomes illusory. The district court in *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F. Supp. 2d 354 (S.D.N.Y. 2000), aff'd, 297 F.3d 195 (2d Cir. 2002), held that once the prior administrative ruling established the private placement, the district had to fund that placement prospectively during the pendency of the next dispute. Plaintiffs' October 2025 district-court motion expressly argued that Defendants had granted themselves a stay. ECF No. 30 at 20.

The Second Circuit, in an opinion by then-Judge Sotomayor, affirmed, explaining that "implicit" in stay-put "is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing," because cutting off public funds "would amount to a unilateral change in placement." *Murphy*, 297 F.3d at 199–200 (quoting *Zvi D.*, 694 F.2d at 906). *Mackey* then cited *Susquenita* with approval, reaffirming that Congress's policy choice was for the child to remain in the current placement at public expense during the dispute. *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir. 2004). And the Second Circuit later summarized that "Congress's policy choice was that a child is entitled to remain in his or her placement at public expense during the pendency of an IEP dispute." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020). The fully briefed appeal in 25-2127 continues to present that broader stay-put and unlawful-self-stay issue.

That principle is decisive here. DOE has not obtained a stay. Yet through continued nonpayment it has accomplished the practical suspension of pendency by contributing to actual program collapse and school closure affecting all Plaintiff-Students. Patel Decl. ¶¶ 4–12. Pendency cannot be preserved in theory while defeated in practice.

### 5.    iBRAIN's Actual Closure Satisfies Even the Standard the Court Applied

Even under the framework the Court previously applied, the new facts are materially different. The feared harm is no longer remote, speculative, or merely financial. The record now contains an

4

actual school-closure email, payroll inability, rent demands, and evidence that iBRAIN's entire program has been placed in jeopardy. Patel Decl. ¶¶ 4–12 & Ex. 1.

Under *Mendez*, parents may obtain relief if they establish that "a delay or failure to pay has jeopardized their child's educational placement." 65 F.4th at 64. That is what now exists. Once school closes due to staffing collapse, the educational continuity protected by § 1415(j) has already been disrupted. What the Court previously viewed as insufficiently imminent is no longer only an allegation of risk. It is now actual educational interruption.

### 6.    Requested Rule 62.1 Relief

For these reasons, Plaintiffs respectfully request that the Court enter an indicative ruling under Rule 62.1(a)(3) stating either:

> (1) That the Court would grant targeted emergency relief if the Second Circuit remands for that purpose, namely an order requiring Defendants immediately to maintain and fund the pendency placements and the services necessary to keep the Plaintiff-Students in those placements pending further proceedings; or

> (2) At a minimum, Plaintiffs' motion raises a substantial issue in light of the post-order developments establishing actual school closure and actual program-level operational collapse.

Plaintiffs respectfully submit that these facts materially alter the factual posture underlying the Court's September 2, 2025 denial of Plaintiffs' motion for a preliminary injunction. See ECF No. 20. If the Court so indicates, Plaintiffs will promptly notify the Second Circuit under Fed. R. App. P. 12.1.

Plaintiffs thank the Court for its courtesy and consideration.

Respectfully submitted,

/s/ Nicole Lancia

Nicole Lancia
Liberty & Freedom Legal Group Ltd.
105 East 34th Street, #190
New York, New York 10016
(646) 850-5035

Cc: All counsel of record via ECF

The Court has reviewed Plaintiffs' latest application for emergency relief.  (*See* Dkt. #68-69).  Plaintiffs are ORDERED to submit for the Court's review: (i) communications from March 28, 2026, forward between iBRAIN (the "School") and iBRAIN parents regarding the closing of the School "due to current staffing limitations" (*see* Dkt. #68 at 1; Dkt. #69-1 at 1); (ii) communications from March 28, 2026, forward between the School and parents regarding the reopening of the School and the circumstances of and timetable for that reopening; and (iii) communications from March 28, 2026, forward between the School and the New York City Department of Education regarding this same information discussed in (i) and (ii).  Because the Court does not believe it can resolve Plaintiffs' application without this information, Plaintiffs are ORDERED to provide this information on or before **April 22, 2026,** at **12:00 p.m.**

Relatedly, Defendants are ORDERED to respond to Plaintiffs' application on or before **April 22, 2026,** at **12:00 p.m.**

Dated:    April 20, 2026                SO ORDERED.
          New York, New York

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE